UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

ANTHONY ARRIAGA,                                    :
                   Plaintiff,         :

v.                                                  :

                                                    :

ANTHONY ANNUCCI, MICHAEL CAPRA,        :
QUANDERA T. QUICK, ELAINE VELEZ, and   :
BENNY THORPE,                                       :
              Defendants.            :

--------------------------------------------------------------x

**OPINION AND ORDER**

23 CV 1941 (VB)

Briccetti, J.:

     Plaintiff Anthony Arriaga, proceeding pro se and in forma pauperis, brings this action against defendants Anthony Annucci, the then-acting commissioner for the New York State Department of Corrections and Community Supervision ("DOCCS"), and Michael Capra, Quandera T. Quick, Elaine Velez, and Benny Thorpe, DOCCS employees at Sing Sing Correctional Facility, located in Ossining, New York ("Sing Sing"). Plaintiff sues defendants in their official and individual capacities, alleging they violated his constitutional and state law rights while he was incarcerated.

     Now pending is defendants' motion to dismiss the second amended complaint (Doc. #30 ("SAC")) pursuant to Rules 12(b)(1) and 12(b)(6).[1] (Doc. #49).

---

[1] Although defendants invoke only Rule 12(b)(6) in their motion, their argument regarding suits against officers in their official capacities "is more appropriately characterized as a [motion for] dismissal under Rule 12(b)(1), as it [is] based on sovereign immunity." Morabito v. New York, 803 F. App'x 463, 465 n.2 (2d Cir. 2020) (summary order). However, this "distinction has no practical effect in this case because whether brought under either subdivision, the Court considers on this motion only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." Crichlow v. Annucci, 2022 WL 6167135, at *6 (S.D.N.Y. Oct. 7, 2022).

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and certain factual allegations in plaintiff's opposition,[2] and draws all reasonable inferences in plaintiff's favor, as summarized below.

Starting in 2011, plaintiff was incarcerated at Sing Sing.  In July 2022, plaintiff was transferred to Sullivan Correctional Facility in Fallsburg, New York ("Sullivan"), where he is currently incarcerated.  As discussed below, plaintiff alleges he was deprived of various rights over several years at both facilities.

I.     Law Library Clerk Assignment and Removal

Plaintiff alleges he was assigned as a law library clerk at Sing Sing on April 16, 2018, and assisted at least sixteen other inmates with legal issues.  Plaintiff, who speaks English and Spanish, was at times the only law clerk able to assist Spanish speaking inmates.

In May 2019, plaintiff claims he was removed from this assignment.  This meant he could no longer assist the inmates with whom he was previously working, and the Spanish

---

Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2]     Because plaintiff is proceeding pro se, the Court considers new allegations in his opposition, to the extent they are consistent with the SAC.  See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016); see also Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (Although "[a] pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.").

speaking inmate population at Sing Sing could not receive legal assistance from a law library clerk.  Plaintiff complained about his removal and was informed it was mandated by a "length of stay" memorandum Commissioner Annucci had issued earlier that year.  According to the memorandum, those inmates with "security sensitive" work assignments could be removed from their positions after six months.  This length-of-stay policy was allegedly motivated by concerns for overall facility safety and security and to prevent against "complacency and overfamiliarity with staff."  (SAC ¶ 10).

Plaintiff alleges he filed a grievance in May 2019 regarding his removal as law library clerk, and the Inmate Grievance Resolution Committee ("IGRC") confirmed plaintiff was removed because his position as law library clerk was considered security sensitive.  Defendant Capra, Sing Sing's superintendent, allegedly upheld this explanation on appeal.  However, plaintiff alleges law libraries had not previously been deemed sensitive or preferred work assignments and law library clerks had never been removed for the safety and security of the facility.

Plaintiff appealed this decision to the Central Office Review Committee ("CORC"), which upheld the superintendent's determination.  Plaintiff then commenced an Article 78 proceeding in Supreme Court, Albany County, challenging CORC's denial of plaintiff's grievance.  Arriaga v. Malin, Index No. 1873-21 (Sup. Ct., Albany Cnty. filed Mar. 17, 2021).  The Supreme Court dismissed plaintiff's petition, and the Appellate Division, Third Department denied plaintiff's appeal as moot given his transfer to Sullivan.  Arriaga v. Malin, 212 A.D.3d 956 (3d Dep't 2023).

II.    COVID-19 Issues

In March 2020, COVID-19 spread throughout New York State.  Plaintiff alleges

correctional staff at Sing Sing did not follow COVID protocols and precautionary guidelines issued by the Centers for Disease Control and Prevention ("CDC") and New York State and promulgated in DOCCS internal memoranda.

For instance, plaintiff alleges defendants failed to enforce mask mandates for staff and the inmate population, and correction officers were often observed walking around Sing Sing without a mask.  Defendants and correctional staff also, among other things, failed to distribute effective masks, prohibited inmates from receiving effective masks via mail, did not enforce social distancing, did not install hand sanitizer stations or dispensers next to the phones, and did not provide COVID tests to inmates.  Inmates and staff were also not properly quarantined after exposure to COVID-19.  As a result, plaintiff alleges he faced a risk of exposure while incarcerated and contracted COVID-19 at least three times while at Sing Sing.

From April 2 through April 5, 2020, plaintiff developed symptoms consistent with COVID-19.  Plaintiff allegedly requested to see a nurse for his symptoms but did not receive medical attention.  According to plaintiff, from April 7 through May 9, 2020, he lost his senses of taste and smell and, to date, he has not completely recovered these senses.  In May 2020, plaintiff saw his healthcare provider and relayed his symptoms but was denied an antibody test. Plaintiff filed a grievance regarding the alleged lack of medical attention.

In October 2020, plaintiff was quarantined after being exposed to an inmate in the law library who had COVID-19.  Despite testing negative one week into the quarantine, plaintiff remained quarantined for five additional days.  Plaintiff filed grievances about this quarantine.

On November 3, 2021, plaintiff tested positive for COVID-19 and was again quarantined. The quarantine unit allegedly did not adhere to CDC guidelines for prisons.  Plaintiff also claims the unit was improperly ventilated, had no hand sanitizer or bleach, no laundry services, dirty

showers, cold food, and other poor conditions.  Plaintiff filed a grievance regarding this quarantine, the denial of which he ultimately appealed to Superintendent Capra.

In October 2022, plaintiff was quarantined at Sullivan and allegedly faced similar conditions:  the phones and cells were not six feet apart, individuals did not adhere to social distancing, and bleach and hand sanitizer was not available.  According to plaintiff, he was also subjected to a 24-hour lockdown and was denied indoor and outdoor recreation, possession of non-cooking food, hot pot/hot water, commissary access, correspondence with family and lawyers, stationary supplies, a law library tablet, and other rights and privileges otherwise afforded to inmates.  Plaintiff alleges Commissioner Annucci and Sullivan medical staff allowed these violations to occur, but he does not specifically allege Annucci was aware of these conditions.

III.   Denial of Catholic Services

On or about March 15, 2020, Annucci allegedly directed the suspension of Catholic and other religious services at Sing Sing.

On November 26, 2020, plaintiff sent Capra a copy of the Supreme Court's decision in Roman Catholic Diocese of Brooklyn v. Cuomo, which enjoined Governor Cuomo from enforcing an Executive Order limiting congregate religious services.  Plaintiff maintains this decision put Capra on notice that religious services should have been reinstated at Sing Sing as of the date of the decision.

Catholic services were eventually reinstated at Sing Sing on February 27, 2021. According to plaintiff, religious services at Green Haven Correctional Facility, in Stormville, New York ("Green Haven"), by contrast, were suspended for only two months total.

IV.    Grievance Issues

Plaintiff alleges that at Sing Sing, many of his grievances, appeals to the superintendent, and CORC appeals statements were "thrown out, lost, misplaced, delayed, denied, dismissed" by staff in the Inmate Grievance Program ("IGP").  (SAC ¶ 99).  Defendant Quick, the IGP Supervisor, replied to most of plaintiff's grievances when she was not a direct party—i.e., not the employee who allegedly committed the misconduct at issue.

Quick also allegedly has a history of abuse and misconduct with the grievance process. Plaintiff alleges he and other inmates raised this issue to Superintendent Capra, although he does not allege they complained of any specific instances of Quick's misconduct.  Quick was allegedly involved in six other lawsuits in which an inmate claimed his or her grievance was not received or was misplaced.  In all of these cases, the grievance or appeal was never received, but letters as to the status of the grievances were.

V.    Plaintiff's Involvement in Inmate Organizations

Plaintiff alleges he held leadership positions in three inmate organizations while at Sing Sing.  In January 2022, plaintiff was elected as an inmate representative to the Incarcerated Liaison Committee ("ILC"), and he was soon thereafter elected as ILC chairman.  Plaintiff was also president of the Latinos Unidos Organization ("LUO") and chairman of the Creative Corrections Education Foundation ("CCEF").  Plaintiff served on the ILC, LUO, and CCEF executive boards simultaneously, but he contends other inmates had also served on executive boards for multiple inmate organizations at the same time.

Around March 1, 2022, plaintiff filed an ILC agenda raising, among other issues, staff misconduct.  The agenda was denied "almost entirely due to Defendant Capra being upset" at the inclusion of staff misconduct.  (SAC ¶ 107).  At the next meeting, none of the ILC

representatives was permitted to speak and Capra "summarily denied all issues."  (Id.).  When

two other ILC representatives attempted to speak, Capra allegedly told them, "I don't want to

hear nothing."  (Id.).

Around April 1, 2022, plaintiff filed an ILC agenda that again included issues of staff

misconduct.  Plaintiff was not allowed to attend the corresponding ILC meeting and was not

given a reason why.

On or about April 7, 2022, plaintiff filed five purchase orders for office supplies on

behalf of LUO.  Defendant Velez, the Deputy Superintendent for Programs and Law Library

Administrator, denied the purchase orders, specifying "security" and "use what you have in your

office" as reasons for the denial.  (SAC ¶ 113).

An ILC meeting was scheduled for April 15, 2022.  Although plaintiff was not able to

attend due to his participation in the Family Reunion Program that day, Velez and defendant

Thorpe, the Deputy Superintendent for Security, allegedly told other ILC members the meeting

was cancelled because Capra did not like the way the agenda was written, and Capra would

"snatch souls" if the next agenda was written as this one had been.  (SAC ¶ 114).  Staff allegedly

also informed another inmate that Capra planned to remove plaintiff from Sing Sing.

On or about April 18, 2022, Capra allegedly sent plaintiff a letter stating he was being

removed from his leadership positions in LUO and CCEF pursuant to a DOCCS directive.  Velez

later wrote plaintiff a letter in May 2022 explaining plaintiff could not be president of LUO

because of his position on the ILC.

On April 20, 2022, the ILC filed an amended agenda with only a single issue—

communication between the ILC and the Sing Sing administration.  On April 23, Eddie Gibbs[3] came to Sing Sing to interview an inmate regarding letters Gibbs received detailing staff misconduct.  Because of Gibbs's visit, an ILC meeting was held on April 26, but plaintiff and two other inmate representatives were not allowed to attend.  Capra allegedly told the other ILC representatives that plaintiff was prohibited from attending because he and the other inmates were under investigation, although plaintiff was never notified of an investigation.

On April 27, 2022, plaintiff resigned from his position as ILC Chairman.

VI.   Investigation Report by Quick

In March 2022, two Sing Sing inmates—Dennys Acevedo and Ricardo Cepeda—filed a grievance regarding their inability to receive legal assistance while housed in the infirmary.  They claimed Velez terminated their law library clerk facility passes.  Around April 12, 2022, Quick allegedly authored an investigation report in connection with this grievance, which claimed the grievance was a ploy between Acevedo, Cepeda, and plaintiff, designed for plaintiff to "get his facility pass, exchange contraband and have unnecessary conversation."  (SAC ¶ 110).  Plaintiff claims he was not engaged in any such ploy, and the IGRC was surprised to hear plaintiff's name in the report because he was not a direct party to the grievance.  The IGRC allegedly "agreed in favor" of Acevedo and Cepeda.  (Id.).

VII.   Transfer to Sullivan

On July 14, 2022, plaintiff was informed he was being transferred out of Sing Sing.  He was transferred to Green Haven on July 17, and then to Sullivan the following day.

According to plaintiff, a transfer referral must ordinarily be approved by three DOCCS

_____

[3]   Though not relevant to the Court's decision, the Court assumes plaintiff is referring to New York State Assemblyman Eddie Gibbs.

employees:  an offender rehabilitation counselor, the supervising offender rehabilitation coordinator, and the deputy superintendent for programs working at the facility.  However, plaintiff alleges his transfer referral was instead filed and approved by Capra, Velez, and Thorpe—the superintendent, deputy superintendent for programs, and deputy superintendent for security, respectively.  Plaintiff alleges Capra, Velez, and Thorpe relied upon false records and facts, although plaintiff does not allege what these false statements were.  Plaintiff also alleges it was unusual for Capra, "the highest supervisorial authority at Sing Sing," to have ordered plaintiff's transfer.  (SAC ¶ 130).

The transfer order, dated June 3, 2022, stated plaintiff—who had been at Sing Sing since 2011—was "overfamiliar with facility and staff."  (SAC ¶ 132).  The order also claimed plaintiff "uses overfamiliarity to manipulate other, more vulnerable" inmates.  (Id.).  Plaintiff claims there was no investigation into or accusations against him for any such misconduct, and that he had a perfect disciplinary history while incarcerated at Sing Sing.  Plaintiff alleges he was in fact transferred in retaliation for raising staff misconduct issues, Quick's abuse of the grievance process, and other issues during his term as ILC chairman.

Because of his transfer to Sullivan, plaintiff alleges his mother and wife must incur an additional $370 in travel expenses to visit him and participate in the Family Reunion Program, and they must pay $70 per person for every visit.

## DISCUSSION

I.    Standard of Review

A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v.

Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  "[F]ederal courts are courts of limited

jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution

or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d

56, 62 (2d Cir. 2009).  The party invoking the Court's jurisdiction bears the burden of

establishing that jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as

true all material facts alleged in the complaint and draw all reasonable inferences in the

plaintiff's favor," except for "argumentative inferences favorable to the party asserting

jurisdiction."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary

order).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other

grounds, the Court should resolve the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala.

Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

Moreover, the Court must liberally construe submissions of pro se litigants and interpret

them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons,

470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules

permissively is particularly appropriate when, as here, a pro se litigant alleges civil rights

violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a

pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Subject Matter Jurisdiction

A.     Eleventh Amendment Immunity

As an initial matter, plaintiff's claims against defendants in their official capacities must

be dismissed for lack of subject matter jurisdiction. See Joseph v. Leavitt, 465 F. 3d 87, 89 (2d

Cir. 2006) ("[W]e have an independent obligation to consider the presence or absence of subject

matter jurisdiction sua sponte.").  "[A]s a general rule, state governments may not be sued in

federal court unless they have waived their Eleventh Amendment immunity, or unless Congress

has abrogated the states' Eleventh Amendment Immunity." Gollomp v. Spitzer, 568 F.3d 355,

366 (2d Cir. 2009).  "[T]he immunity recognized by the Eleventh Amendment extends beyond

the states themselves to state agents and state instrumentalities that are, effectively, arms of a

state." Id.  As relevant here, a claim for damages against a state official in his official capacity

"is considered to be a claim against the State and is therefore barred by the Eleventh

Amendment." Davis v. York, 316 F.3d 93, 101 (2d Cir. 2002).

New York has not waived its Eleventh Amendment immunity to suit in federal court, and

Congress did not abrogate the states' immunity in enacting Section 1983.  Trotman v. Palisades

Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977); Li v. Lorenzo, 712 F. App'x 21, 22 (2d

Cir. 2017) (summary order).  The Eleventh Amendment therefore bars plaintiff's claims for

money damages against defendants in their official capacities.

Accordingly, plaintiff's claims for money damages against all defendants in their official

capacities must be dismissed.

B.      State Law Claims

Liberally construing the SAC, plaintiff asserts state law claims for negligence, gross

negligence, negligent and gross negligent training, direction, retention, and supervision, slander

per se, and fraud.

However, these claims are barred by Section 24 of New York Correction Law.  Barnes v.

Uzu, 2022 WL 784036, at *18 (S.D.N.Y. Mar. 15, 2022).  Section 24 states "[n]o civil action

shall be brought" against state officers or employees in "[their] personal capacity, for damages

arising out of any act done or the failure to perform any act within the scope of the employment

and in the discharge of the duties by such officer or employee."  "The Second Circuit has held

that this provision prevents federal courts from exercising pendent jurisdiction over state law

claims appended to federal claims brought pursuant to 42 U.S.C. § 1983."  Sughrim v. New

York, 503 F. Supp. 3d 68, 98 (S.D.N.Y. 2020).  Here, plaintiff does not allege any defendant

acted outside the scope of their DOCCS employment.

Accordingly, plaintiff's state law claims for negligence, gross negligence, negligent and gross negligent training, direction, retention, and supervision, slander per se, and fraud must be dismissed.

III.   Removal from Law Library Work Assignment Claims

Defendants argue plaintiff cannot state a claim arising from his removal as a law library clerk because plaintiff has not alleged he personally suffered a cognizable injury.

The Court agrees.

To satisfy the "irreducible constitutional minimum of standing . . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). When, as here, a "Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden." John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017). The Court must determine whether a complaint "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Id.

As a general rule, the "injury-in-fact" requirement means a plaintiff must have personally suffered an injury. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Indeed, a party may invoke the court's authority only to "seek redress for injury done to him, but may not seek redress for injuries done to others." Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972); see also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008).

The only injury plaintiff has alleged in connection with his removal as a law library clerk is that of his inmate clients.  Specifically, plaintiff argues he had a legal assistant-client relationship with several inmates who were prejudiced when "left without Plaintiff's assistance." (Doc. #53 ("Pl. Opp.") ¶ 9).  Moreover, because plaintiff was allegedly the only law library clerk who spoke both English and Spanish, the Spanish speaking inmate population at Sing Sing had no access to legal assistance once plaintiff was removed from his position.  Indeed, plaintiff makes clear he brought his claim because he was "denied access to the Courts of his assigned clients," not that he himself was denied access to the courts.  (Id.).  Therefore, plaintiff has not stated a claim arising from his removal from the law library assignment.

Accordingly, plaintiff's claims for First Amendment denial of access to the courts, Fourteenth Amendment equal protection violations, "erroneous removal . . . from law library assignment," "interference with the writ of habeas corpus," "legal assistance," "neglect to prevent or intervene," and "wrongful classification of all law libraries as security sensitive" (SAC at ECF 6)[4] must be dismissed.

IV.   Deliberate Indifference Claim

Liberally construing the SAC as asserting a claim under the Eighth Amendment for deliberate indifference regarding the conditions of his confinement during the COVID-19 pandemic, plaintiff fails to properly state a claim.

To allege a deliberate indifference claim under the Eighth Amendment, a plaintiff must plead both:  "(a) conditions of confinement that objectively pose an unreasonable risk of serious harm to [his] current or future health, and (b) that the defendant acted with 'deliberate

---

[4]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

indifference.'"  Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020).  "Deliberate indifference

under the Eighth Amendment standard means the official must know of and disregard an

excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  Id.

 With the exception of plaintiff's allegation that he appealed his grievance regarding his

November 2021 quarantine to Capra, plaintiff has failed to allege defendants even knew about

the conditions at issue, and thus cannot have met the second subjective knowledge prong

required to state a claim for deliberate indifference.

 As to the November 2021 quarantine, plaintiff has failed to allege that the conditions

were sufficiently serious to meet the objective prong.  In his grievance, plaintiff complains that

while quarantined, he was subjected to cold air coming through the ventilation system,

inadequate cleaning supplies and laundry services, mildewy showers, and other poor conditions.

However, that plaintiff was quarantined because he tested positive for COVID-19 in the first

place demonstrates these circumstances do not rise to the level of deliberate indifference.  In fact,

plaintiff's allegations that Sing Sing staff initiated social distancing practices, issued cloth face

masks, and enforced quarantining procedures "indicate prison officials were trying, very hard, to

protect inmates against the virus and to treat those who have contracted it, and belie any

suggestion that prison officials have turned the kind of blind eye and deaf ear to a known

problem that would indicate deliberate indifference."  Chunn v. Edge, 465 F. Supp. 3d at 203;

see also Swain v. Junior, 958 F.3d 1081, 1090 (11th Cir. 2020) ("Accepting, as the district court

did, that the defendants adopted extensive safety measures such as increasing screening,

providing protective equipment, adopting social distancing when possible, quarantining

symptomatic inmates, and enhancing cleaning procedures, the defendants' actions likely do not amount to deliberate indifference.").

Accordingly, plaintiff's deliberate indifference claim under the Eighth Amendment for violations regarding COVID-19 precautions must be dismissed.  (SAC at ECF 9).

## V.   Free Exercise Claim for Denial of Catholic Services

Defendants argue plaintiff has not adequately alleged a free exercise claim under the First Amendment based on the suspension of Catholic services at Sing Sing because they did not place a substantial burden on his religious beliefs and in any event this reflected "the kind of 'informed discretion' for which deference should be given."  (Doc. #56 at ECF 10).

The Court disagrees, finding that plaintiff has adequately alleged a free exercise claim under the First Amendment.  However, the Court finds plaintiff has only adequately alleged the personal involvement of Annucci and Capra.

### A.   Infringement on Religious Rights

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I.  This entails both the protection of "an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion, including assembling with others for a worship service."  Kane v. De Blasio, 19 F.4th 152, 163–64 (2d Cir. 2021).

"To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious beliefs; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]."  Kravitz v. Purcell, 87 F.4th 111, 127–28 (2d Cir. 2023).  "As long as a restriction

on an inmate's religious practice is reasonably related to legitimate penological interests, it does not violate the First Amendment."  Barry v. Russo, 2024 WL 965000, at *7 (S.D.N.Y. Mar. 5, 2024).

First, plaintiff has adequately alleged, and defendants do not dispute, his sincerely held religious beliefs as a Catholic, and that his ability "to receive any communion, penance, spiritual advice, congregate worship" at mass is part of those sincerely held beliefs.  (Pl. Opp. ¶ 16).

Second, plaintiff has also adequately alleged that the suspension of Catholic services infringed upon his religious beliefs.  "It is well established that prisoners have a constitutional right to participate in congregate religious services."  Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).  An inmate's "right to practice his religion is, however, not absolute."  Id. "Denying an inmate congregate religious services over a prolonged period" may constitute a substantial burden.  Jones v. Malin, 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017).  Here, Catholic services at Sing Sing were suspended for nearly a year, such that plaintiff could not receive communion or penance or engage in congregate worship during this time.  This is sufficient to plausibly allege his religious rights were infringed.

Finally, defendants have not yet articulated a particular penological interest served by denying plaintiff access to religious services.  As such, the Court "cannot conclude as a matter of law that the [nearly year-long] suspension of [Catholic] services does not state a free exercise claim."  Jones v. Malin, 2017 WL 985943, at *4 (holding defendants burdened plaintiff's religious beliefs by preventing him from attending weekly religious services for two months); see also Lloyd v. City of New York, 43 F. Supp. 3d 254, 264 (S.D.N.Y. 2014) (denying motion to dismiss free exercise claim because defendants "have not answered, and so have not yet articulated any 'legitimate penological interest'").  While defendants argue this practice should

be afforded deference, they present no penological interest justifying it.  If, after discovery,

defendants move for summary judgment, the Court will reconsider the matter.

B.     Personal Involvement

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's

direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.S.

Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that

personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983.").  "Direct participation" includes "a person who, with

knowledge of the illegality, participates in bringing about a violation of the victim's rights but

does so in a manner that might be said to be 'indirect'—such as ordering or helping others to do

the unlawful acts, rather than doing them him—or herself."  Provost v. City of Newburgh, 262

F.3d 146, 155 (2d Cir. 2001).  However, a defendant may not be held liable under Section 1983

solely because he employs or supervises a person who violated the plaintiff's rights.  See

Tangreti v. Bachmann, 983 F.3d 609, 619–20 (2d Cir. 2020).

Plaintiff alleges Annucci, as acting Commissioner of DOCCS, directed the suspension of

religious services.  Plaintiff also alleges he sent Capra, the superintendent of Sing Sing, a copy of

the Supreme Court's decision in Roman Catholic Diocese of Brooklyn v. Cuomo, which—

liberally construing plaintiff's factual allegations—put Capra on notice that religious services

should be reinstated at Sing Sing.  Liberally construing plaintiff's allegations and drawing all

inferences in his favor, the Court finds plaintiff has plausibly alleged Annucci and Capra were

directly involved in the suspension of, and decision not to reinstate, Catholic services.

Plaintiff makes no allegations, however, implicating Quick, Velez, and Thorpe in the

denial of religious services, and thus plaintiff's free exercise claim against them must be

dismissed.  See Perkins v. City of New York, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017)

("[W]here the complaint names a defendant in the caption but contains no allegations indicating

how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in

regard to that defendant should be granted.").

Accordingly, plaintiff's First Amendment free exercise claim for the denial of Catholic

services may proceed as to Annucci and Capra but must be dismissed as to Quick, Velez, and

Thorpe.

VI.    Grievance Issues

Plaintiff asserts constitutional claims regarding issues with the prison grievance process,

such as grievances being lost or misplaced, allegedly tied to conduct by Quick.  Although

defendants do not directly address these claims in their motion, plaintiff cannot state a claim

based on interference with his administrative remedies because he is not constitutionally entitled

to grievance procedures.

"[I]nmate grievance programs created by state law are not required by the Constitution,

and consequently allegations that prison officials violated those procedures do not give rise to a

cognizable Section 1983 claim."  Alvarado v. Westchester County, 22 F. Supp. 3d 208, 214

(S.D.N.Y. 2014).  "Inmates have no constitutional entitlement to grievance procedures, to

receive a response to a grievance, or to have a grievance processed properly."  Schlosser v.

Manuel, 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (citing Riddick v. Semple, 731 F.

App'x 11, 13 (2d Cir. 2018) (summary order)).  Rather, when interference with an inmate's

pursuit of relief renders the administrative process unavailable, the proper remedy is to excuse

the requirement to exhaust administrative remedies.  See Ross v. Blake, 578 U.S. 632, 644

(2016).

Accordingly, plaintiff's constitutional claims in connection with the grievance process must be dismissed.

VII.    First Amendment Retaliation Claim

Plaintiff alleges that, in retaliation for raising issues of staff misconduct and other inmate complaints on ILC agendas, defendants, among other things, prevented him from attending ILC meetings, removed him from leadership positions in two other inmate organizations, and transferred him to Sullivan.

Defendants argue plaintiff fails to allege facts sufficient to demonstrate defendants took an adverse action against him because there is no constitutional protection against transfer from one prison to another and plaintiff has not adequately alleged a causal connection between the protected speech and an adverse action.

The Court disagrees but concludes plaintiff has not adequately pleaded the personal involvement of all defendants in the alleged retaliation.

A.      First Amendment Claim for Retaliatory Transfer

To state a First Amendment retaliation claim, "a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the first element, a prisoner engages in constitutionally protected conduct by "filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body, such as the ILC." Dolan v. Connolly, 794 F.3d at 295. Because plaintiff alleges he raised a number of issues both by filing grievances on his own behalf and through his participation in the ILC, he has sufficiently alleged facts to satisfy the first element.

With respect to the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).

As to the third element, "[a] plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015). A close temporal connection between the protected activity and retaliatory conduct may be sufficient to allege a causal connection. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (holding six-month gap between protected activity and retaliation sufficient to support an inference of a causal connection).

Importantly, courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, to survive a motion to dismiss, a prisoner asserting a retaliation claim may not rest on "wholly conclusory" statements but must allege "specific and detailed" supporting facts. Id.

### 1.    Adverse Actions

The Court concludes plaintiff has adequately alleged his transfer to Sullivan, his removal from inmate organization leadership positions, and being prevented from attending ILC meetings constitute adverse actions.

First, it is well established that transfers may be adverse actions. Although prison

officials have broad discretion to transfer prisoners, "[t]hey may not, however, transfer them solely in retaliation for the exercise of constitutional rights."  Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir. 1989) (emphasis added).  Rather, the proper inquiry is whether the transfer, which may "otherwise not ris[e] to the level of a constitutional violation," Dolan v. Connolly, 794 F.3d at 295, would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, Davis v. Goord, 320 F.3d at 353.

Plaintiff has alleged sufficient facts to suggest a similarly situated individual of ordinary firmness would view the transfer as a deterrent to raising the issues he did on the ILC.  Plaintiff claims he was transferred out of Sing Sing, where he had been incarcerated for eleven years and had established himself in various organizations.  In addition, he has alleged his transfer made it more expensive and time consuming for his family to visit him.  These allegations are sufficient to plead that the transfer was adverse.  See Brown v. Cunningham, 2017 WL 627463, at *3 (S.D.N.Y. Feb. 14, 2017) (finding plaintiff's alleged transfer was adverse because his original prison was within his area of preference and, at his new prison, "he would no longer be able to participate in certain educational or reentry programs," and "his loved ones would be further away").

Defendants' citation to cite Meachum v. Fano, 427 U.S. 215 (1976), and Lane v. Reid, 575 F. Supp. 37 (S.D.N.Y. 1983), is not persuasive.  These cases arise in the context of due process claims under the Fourteenth Amendment and illustrate plaintiff did not have a liberty interest in remaining at Sing Sing, such that his transfer to Sullivan did not trigger the procedural requirements of the Due Process Clause.  However, they do not speak to whether his transfer was adverse under the First Amendment.

Second, the Court further finds plaintiff has adequately alleged blocking him from

attending ILC meetings and removing him from other leadership positions were both adverse actions because such consequences would deter a person of ordinary firmness from raising misconduct issues on ILC agendas.  See Davis v. Goord, 320 F.3d at 353.

        2.    Causal Connection

Plaintiff has also adequately alleged a causal connection between his protected speech and the adverse actions discussed above.

First, plaintiff alleges defendants prevented him from coming to ILC meetings in the days following his protected activity, removed him from other leadership positions in the subsequent weeks, and transferred him out of Sing Sing only three months later.  These allegations, although indirect, strongly support a causal connection.  See Espinal v. Goord, 558 F.3d at 129.  Second, plaintiff alleges Superintendent Capra, in particular, was motivated by retaliatory animus:  Capra allegedly told staff he would "snatch souls" if another agenda included staff misconduct issues (SAC ¶ 114), and, according to plaintiff, Capra told others he had a plan to get plaintiff out of Sing Sing.  Finally, plaintiff alleges he had a perfect disciplinary record, which "suggest[s] the reason for the transfer was to retaliate against" him.  Brown v. Cunningham, 2017 WL 627463, at *3.  However, the SAC also identified non-retaliatory explanations, including a DOCCS directive that purportedly necessitated his removal from other leadership positions and concerns that he was manipulating inmates, thus motivating his transfer.

Drawing all inferences in his favor, the Court finds plaintiff's allegations of temporal proximity between the protected conduct and adverse actions, the retaliatory animus, and his perfect disciplinary record outweigh the potential non-retaliatory concerns, at least at the pleading stage, and are sufficient to allege the necessary casual connection between the exercise of his First Amendment rights and the retaliatory actions.

Accordingly, plaintiff has alleged sufficient facts to state a First Amendment retaliation claim.

B.    Personal Involvement

Although plaintiff has stated a First Amendment retaliation claim, he has not plausibly alleged all defendants were personally involved.

First, plaintiff does not make any individualized factual allegations implicating Quick in the alleged adverse actions.  As a result, plaintiff has failed to state a retaliation claim against Quick.

Second, liberally construing the allegations of the SAC in plaintiff's favor, the only claims against Annucci regarding the alleged adverse actions appear to be based on a theory of supervisory liability.  However, there is no "special rule for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 612 (2d Cir. 2020).  Rather, a plaintiff must allege that each supervisor must have, through his or her own individual actions, violated the constitution.  Id.  Plaintiff has failed to allege any facts suggesting Annucci knew about plaintiff's alleged inability to attend ILC meetings, removal from other leadership positions, and retaliatory transfer, had a policy sanctioning such allegedly unjustified conduct, or otherwise had any reason to intervene in plaintiff's situation.  As a result, plaintiff has failed to state a retaliation claim against Annucci.

In contrast, plaintiff has sufficiently alleged the personal involvement of Capra, Velez, and Thorpe.  Plaintiff alleges all three defendants filed false statements in the transfer referral and improperly approved his transfer.  Plaintiff also alleges Capra prohibited plaintiff from attending ILC meetings and told staff he had a plan to remove plaintiff from Sing Sing.  Further, plaintiff alleges Capra and Velez both sent plaintiff letters regarding his removal from leadership roles in other inmate organizations.  These allegations are sufficient to allege their personal

involvement.

Accordingly, plaintiff's First Amendment retaliation claim must be dismissed as against Annucci and Quick, but may proceed as to Capra, Velez, and Thorpe.

## VIII.   Conspiracy Claims

The Court liberally construes the SAC and plaintiff's opposition as asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986 for conspiring to deprive him of his constitutional rights and failing to intervene.  To state a conspiracy claim, plaintiff must allege must allege two or more state actors formed an agreement to inflict a constitutional injury.  Thomas v. Roach, 165 F.3d 137, 146-47 (2d Cir. 1999); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Because the SAC lacks any particularized facts supporting the existence of an agreement between any of the defendants to deprive plaintiff of his constitutional rights and contains only conclusory allegations of a conspiracy, he has not adequately pleaded a conspiracy.  See, e.g., Kernan v. N.Y.S. Dep't of Fin. Servs., 712 F. App'x 61, 66 (2d Cir. 2017) (summary order).

Having failed to plead a conspiracy claim under Section 1985, plaintiff's Section 1986 claim necessarily fails as well.  See, e.g., Graaf v. N. Shore Univ. Hosp., 1 F. Supp. 2d 318, 323 (S.D.N.Y. 1998) ("Absent a § 1985 claim, a plaintiff cannot bring a § 1986 claim in this circuit.") (citing Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996)).

Accordingly, plaintiff's conspiracy claims must be dismissed.

## IX.   Qualified Immunity

Defendants argue they are entitled to qualified immunity as to plaintiff's First Amendment retaliation claim because they reasonably believed transferring plaintiff to another

correctional facility did not violate any clearly established constitutional right.[5]

The Court disagrees.

"The issues on qualified immunity are:  (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)).  Retaliatory transfer has been "clearly illegal" for decades.  Meriwether v. Coughlin, 879 F.2d at 1046.

As discussed above, plaintiff has sufficiently alleged Capra, Velez, and Thorpe retaliated against him for raising issues of staff misconduct on the ILC.  This implicates a First Amendment right, which was clearly established at the time.  Thus, assuming the truth of plaintiff's allegations, it was on its face not reasonable for defendants to believe they could lawfully retaliate against plaintiff for exercising that right.  Moreover, defendants' conclusory argument that they reasonably believed transfer to another facility does not violate a clearly established right introduces facts from outside of the pleadings that are not admissible at the motion to dismiss stage.

Accordingly, Capra, Velez, and Thorpe are not entitled to qualified immunity on plaintiff's First Amendment retaliation claim at this stage of the proceedings.

---

[5] Defendants also argue they are entitled to qualified immunity on plaintiff's deliberate indifference and removal from work assignment claims.  Because the Court dismisses those claims, it need not address whether defendants would otherwise be entitled to qualified immunity.

X.    <u>Remaining Claims for Injunctive Relief</u>

Defendants argue that to the extent plaintiff's claims challenge actions taken while he was incarcerated at Sing Sing, those claims are moot insofar as they seek injunctive relief.

The Court agrees.

State officials may be subject to suit in their official capacities for injunctive or other prospective relief.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989) ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State.").  To seek injunctive relief against state officials in their official capacities, a plaintiff must allege "an ongoing violation of federal law."  <u>In re Deposit Ins. Agency</u>, 482 F.3d 612, 618 (2d Cir. 2007).  Nonetheless, a prisoner's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials of that facility.  <u>Booker v. Graham</u>, 974 F.3d 101, 107 (2d Cir. 2020); <u>Walker v. City of New York</u>, 367 F. Supp. 3d 39, 51 (S.D.N.Y. 2019).

Because plaintiff was transferred out of Sing Sing, his requests for injunctive or declaratory relief as to officials at Sing Sing are moot.  Moreover, plaintiff's requests for injunctive relief for his surviving claims arise from only past acts—namely, the past suspension of Catholic services at Sing Sing and defendants' alleged retaliatory conduct—such that plaintiff has failed to allege any ongoing violation of federal law.  Accordingly, plaintiff's claims for injunctive relief must be dismissed.

XI.   <u>Leave to Amend</u>

Federal Rule of Civil Procedure 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15 is warranted with respect to <u>pro se</u> litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  <u>Matima v. Celli</u>, 228 F.3d 68, 81 (2d Cir. 2000).

Thus, district courts "should not dismiss [pro se complaints] without granting leave to amend at least once while a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But, "a futile request to replead should be denied." Id.

Having read the SAC and plaintiff's opposition liberally, aside from the claims the Court has allowed to proceed, the Court does not find any allegations suggesting plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" such that he should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile, because the problems with plaintiff's claims are substantive, and supplementary and/or improved pleading will not cure the deficiencies of the SAC. See id.

Accordingly, leave to amend is denied.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The following claims are dismissed:

- Access to the Courts (First Amendment);

- Conspiracy (42 U.S.C. § 1983);

- Conspiracy (42 U.S.C. § 1985);

- Defamation of Character: Libel and Slander;

- Deliberate Indifference (Eighth Amendment);

- Erroneous Removal of Plaintiff from Law Library Assignment;

- Equal Protection of the Laws (Fourteenth Amendment);

- Failure to Intervene (42 U.S.C. § 1986);

- Fraud;

- First Amendment Free Exercise claim as to defendants Velez, Thorpe, and Quick;

- First Amendment Retaliation claim as to defendants Annucci and Quick;

- Gross Negligence;

- Gross Negligent Training, Direction, Retention and Supervision;

- Interference with the Writ of Habeas Corpus;

- Negligence;

- Negligent Training, Direction, Retention and Supervision; and

- All claims against defendants in their official capacities.

The following claims may proceed:

- First Amendment Free Exercise claim as to defendants Annucci and Capra; and

- First Amendment Retaliation claim as to defendants Capra, Velez, and Thorpe.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate Quandera T. Quick as a defendant on the docket.

The Clerk is further instructed to terminate the motion.  (Doc. #49).

By separate Order, the Court will schedule an initial conference.

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated:  April 23, 2024
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

29